IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LYMAN WHITAKER, an individual, and WHITAKER STUDIO, INC., a Utah corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>STANWOOD IMPORTS, a California corporation, and ORIENTAL TOUCH, LLC, a California limited liability company,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:10-CV-539 TS |

This matter is before the Court on Defendants Stanwood Imports ("Stanwood") and Oriental Touch, LLC's ("Oriental") (collectively "Defendants") Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I.  BACKGROUND

Plaintiff Lyman Whitaker ("Whitaker") is a Utah artist and is the owner and president of Whitaker Studio, Inc. (collectively "Plaintiffs").  Plaintiffs control the rights to a copyrighted work entitled the Double Spinner.  The Double Spinner is a wind sculpture created by Plaintiff

1

Lyman Whitaker (hereinafter "Whitaker Sculpture").  In this action, Plaintiffs allege that Defendants' wind sculpture (hereinafter "Stanwood Windmill") infringes the copyright held on the Whitaker Sculpture.

The elements of the Whitaker Sculpture will be discussed in more detail below, but a brief description follows.  The Whitaker Sculpture consists of a steel and copper shaft and a copper T-bar upon which two counter-rotating "spinners" are attached.  The "spinners" consist of a hub from which eight arms extend.  The arms have a gentle "C" curve and are made of steel.  At the end of each arm are cup-shaped wind-catchers made of copper.  Plaintiffs apply a patina of turquoise verdigris to the copper elements of the Whitaker Sculpture.  The Whitaker Sculpture is made in various sizes, ranging from 30 inches in diameter and 8 feet tall, to 10 feet in diameter and 22 feet tall.  The Whitaker Sculpture is hand-made, hand-poured, and hand-cast.

Ryan Huang ("Huang") is the owner of Stanwood.  In 2009, Mr. Huang saw an inexpensive double spinner windmill at a nursery in California (hereinafter the "OSH Model").  Mr. Huang bought the OSH Model and decided to improve the design.  Mr. Huang then sent the OSH Model to a contact in China to redesign the windmill using copper.

The Stanwood Windmill, like the Whitaker Sculpture, consists of a shaft and a T-bar to which two "spinners" are attached.  The "spinners" of the Stanwood Windmill consist of eight "S" shaped arms.  At the end of each arm is a leaf-shaped wind-catcher.  The wind-catchers are made to look like a leaf and have veins and a stem.  The Stanwood Windmill is machine-pressed and made from molds, comes in one size, is entirely copper (except for a brass hub), and has no patina applied to it.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[1] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

> The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim.  Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.
> If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[4]

## III.  DISCUSSION

Plaintiffs allege that the Stanwood Windmill infringes the copyright of the Whitaker Sculpture.

---

[1] FED. R. CIV. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (quotation marks and citations omitted).

"There are two elements to a copyright infringement claim: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"[5]  "The plaintiff bears the burden of proof on both elements."[6]  There is no apparent dispute that Plaintiffs own a valid copyright.  Therefore, the Court will focus on the second element: copying.

The copying element has two components: "first, whether Defendants, as a factual matter, copied Plaintiff's work, and second, whether, as a mixed issue of fact and law, those elements that were copied were protected."[7]

A.   COPYING

"Direct proof of copying is often hard to come by."[8]  Therefore, a plaintiff can indirectly prove copying.[9]  To do so, Plaintiffs must show both access to the copyrighted material and substantial similarities between the copyrighted material and the allegedly copied material.[10]  Plaintiffs may meet their initial burden of establishing access by showing that Defendants had a reasonable opportunity to view or copy the allegedly infringed work.[11]  "To decide whether two works are substantially similar we ask whether the accused work is so similar to the plaintiff's

---

[5]*La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

[6]*Id*.

[7]*Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

[8]*La Resolana Architects, PA*, 555 F.3d at 1178.

[9]*Id*.

[10]*Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284.

[11]*Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1490 (10th Cir. 1993).

work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."[12]

In this case, there is no direct evidence of copying. Defendants have provided the testimony of Mr. Huang, who testified that he did not know of or see the Whitaker Sculpture until after the Stanwood Windmill had been developed and sold. Plaintiffs admit that "there is no direct evidence that Huang or any other representative of the Stanwood parties saw the Whitaker sculpture before creating the accused product."[13] Thus, in order to overcome summary judgment, Plaintiffs must present some evidence upon which a reasonable jury could find that Defendants had a reasonable opportunity to view or copy the Whitaker Sculpture.

Plaintiffs present three arguments. First, Plaintiffs argue that the Whitaker Sculpture was widely disseminated and that such dissemination provides circumstantial evidence of access. Second, Defendants argue that Stanwood's use of the name "Double Spinner" provides evidence of access. Third, Plaintiffs argue that the Stanwood Windmill is a copy of a different product, the OSH Model, which was in turn a copy of the Whitaker Sculpture. Plaintiffs argue that a copy of a copy is still actionable. The Court will address each argument in turn.

*1.      Widely Disseminated*

Plaintiffs argue that access may be found when a copyrighted work is widely disseminated. In support, Plaintiffs cite *Peel & Co., Inc. v. The Rug Market*,[14] a case arising out

---

[12]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002) (citations and quotation marks omitted).

[13]Docket No. 53, at 32.

[14]238 F.3d 391 (5th Cir. 2001).

of the Fifth Circuit Court of Appeals. In *Peel*, the manufacturer of a rug sued the seller and manufacturer of a different rug alleging copyright infringement. The district court found that the plaintiff had failed to present sufficient evidence that the defendants had access to plaintiff's rug. The Fifth Circuit reversed, finding that the plaintiff had presented sufficient evidence to withstand summary judgment. The court found that the plaintiff had presented evidence that its rug was widely disseminated and that there was additional evidence from which a jury could find the defendants had access to it.

Plaintiffs argue that this case is "strikingly similar" to *Peel*. However, the only fact of this case that is similar to *Peel* is the fact that several thousand units were sold. In *Peel*, 4,000 rugs were sold, while here Plaintiffs have presented evidence that over 7,000 Whitaker Sculptures were sold. However, a review of *Peel* shows that it was not just the number of rugs sold that created a genuine issue of material fact. Rather, a number of other facts were found to be important.

The evidence in *Peel* showed that the subject rugs were also displayed in showrooms, at trade shows, and in catalogs. In addition, one defendant, the rug seller, admitted that an employee attended a trade show where the plaintiff's rug was exhibited and may have even visited the plaintiff's showroom where the rug was displayed. Other circumstantial evidence also supported a finding that the defendants may have had access to the plaintiff's rug. Based on all of this, the court found that the plaintiff had "raised a genuine issue of material fact as to whether the [rug] was widely disseminated among those involved in the United States rug trade, thus

proving both [defendants] access to the [rug]."[15] Therefore, summary judgment was inappropriate.

In this case, Plaintiffs have failed to provide the kind of evidence shown in *Peel*. It is true that Plaintiffs have presented evidence that they sold over 7,000 Whitaker Sculptures. However, Plaintiffs have failed to present any evidence, such as that found in *Peel*, that would indicate that Defendants would have seen or had access to those sculptures. For example, there is no evidence, as there was in *Peel*, that Mr. Huang visited Mr. Whitaker's studio, went to a gallery where one of his sculptures was on display, or even that he drove by an area where the Whitaker Sculpture may have been placed. In *Peel*, it was not just the wide dissemination of the rug that the court relied on to find a genuine issue of material fact, it was the wide dissemination of the rug to areas where the defendants may have seen the rug that was important. In this case, there is no such evidence. Therefore, Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact.

    2.    *Name*

Plaintiffs argue that Stanwood's use of the name "Double Spinner" provides evidence of access. However, the evidence shows that Huang used the name "Double Spinner" because that is the name used by the OSH Model. Further, the term "Double Spinner" is clearly descriptive of the product. Therefore, the Court finds that this fails to provide evidence of access.

Plaintiffs also argue that Defendants appear to be using Plaintiff Lyman Whitaker's name to direct Internet customers to Stanwood Imports. Plaintiffs suggest that this provides further

---

[15] *Id.* at 397.

evidence of access. However, the evidence to support this argument is so speculative and conclusory that a reasonable jury could not find that it shows evidence of access.

    3.    *Third-Party Copying*

Plaintiffs also argue that Defendants can be held liable for infringement because the Stanwood Windmill is a copy of the OSH Model, which in turn infringes the Whitaker Sculpture. As stated above, it is undisputed that Defendants derived the Stanwood Windmill largely by copying the OSH Model.

"There is a transitive property to actual copying: if work A is an actual copy of work B, and work B is an actual copy of work C, then work A is deemed an actual copy of work C."[16] Thus, "it is no defense even if the defendant did copy from the plaintiff if such third work was itself an unauthorized copy of the plaintiff's work."[17]

In this case, the undisputed evidence is that Defendants created the Stanwood Windmill largely by copying the OSH Model. Plaintiffs, however, have failed to present evidence that the maker of the OSH Model had access to or copied the Whitaker Sculpture. Rather, Plaintiffs' argument is based entirely on counsel's comparison of the alleged similarities between the OSH Model, the Stanwood Windmill, and the Whitaker Sculpture.

Even if Plaintiffs had presented sufficient evidence of access, Plaintiffs must also show substantial similarities between the two products. While there are similarities between all three

---

[16] *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 165 (E.D.N.Y. 2002).

[17] 2-8 Nimmer on Copyright § 8.01[C].

products, as will be discussed below, the Stanwood Windmill is not substantially similar to the Whitaker Sculpture and, for the same reasons, neither is the OSH Model. Therefore, Defendants have failed to present sufficient evidence to survive summary judgment.

B.     SUBSTANTIAL SIMILARITY

"[L]iability for copyright infringement will attach only where protected elements of a copyrighted work are copied. To impose such liability, the court must find substantial similarity between those aspects of [Plaintiffs' product] which are legally protectable and the Defendants' [product]."[18] "Thus, the question of whether Defendants infringed on [Plaintiffs'] copyright turns on whether Defendants' product is substantially similar to the protectable elements of [Plaintiffs'] product."[19] "This commonly stated rule raises two questions: First, what elements of a copyrighted work are legally protectable? Second, how do courts determine whether a copyrighted work's legally protectable elements are "substantially similar" to an accused work?"[20]

To help answer these questions, the Tenth Circuit has sometimes found it useful to apply the "abstraction-filtration-comparison" test.[21] However, "not every case requires extensive analysis" and the test to be used "may vary depending upon the claim involved, the procedural

---

[18] *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284 (citation omitted).

[19] *Id.*

[20] *Blehm v. Jacobs*, ---F.3d---, 2012 WL 6700437, at *4 (10th Cir. Dec. 27, 2012).

[21] *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284.

posture of the suit, and the nature of the [works] at issue."[22]  In the recent case of *Blehm v. Jacobs*, the Tenth Circuit declined to apply the "abstraction-filtration-comparison" test because the visual works at issue were "relatively simple."[23]  Although the court did not apply the "abstraction-filtration-comparison" test, the court noted that the "goal is the same: separating unprotectable ideas from protectable expression in [Plaintiffs'] copyrighted works and comparing the remaining protectable expression to [Defendants' product] to determine whether they are substantially similar."[24]  For substantially the same reasons stated by the Tenth Circuit in *Blehm*, the Court finds it unnecessary to use the "abstraction-filtration-comparison" test here.  Rather, the Court will apply the simplified two-part test discussed in *Blehm*

Under that test, the Court "must first distill the protectable elements of the copyrighted work—i.e., determine what aspects constitute protectable expression."[25]  Defendants assert that the protectable elements of the Whitaker Sculpture are "its size, color, the form of the arms, and the form of the wind-catchers."[26]  Plaintiffs, on the other hand, suggests that the protectable elements include "two eight-armed counter rotating spinners with narrow, curved arms terminating in elongated wind catchers matching the curve of the arms."[27]

---

[22]*Jacobsen*, 287 F.3d at 943 n.5 (quotation marks and citation omitted).

[23]*Blehm*, --F.3d---, 2012 WL 6700437, at *4 n.4.

[24]*Id*.

[25]*Id*. at *4.

[26]Docket No. 49, at 19.

[27]Docket No. 53, at 43.

Neither assessment is entirely correct.  Defendants weed out nearly all elements of the Whitaker Sculpture, ignoring clearly protectable elements.  The Court cannot agree to such a narrow definition of protectable elements.  Plaintiffs, on the other hand, seek protection for an idea: a sculpture with "two eight-armed counter rotating spinners with narrow, curved arms terminating in elongated wind catchers matching the curve of the arms."  Copyright law clearly distinguishes between an idea and its expression.[28]  Therefore, the Court must reject Plaintiffs' argument.

Though copyright does not protect Plaintiffs' idea of a double spinner, it does "protect[] the particularized expression of the idea of a [sculpture] with such features."[29]  For example, "a sweater designer can have copyright protection over an original way of using squirrels as a design element in conjunction with fall colors, stripes, and panels, even though those elements individually constitute ideas in the public domain."[30]  Thus, while Plaintiffs' attempt to gain copyright protection over the entire sculpture must fail, copyright does protect the particularized expression of that idea.  Therefore, items like the form and shape of the arms and wind-catchers, the materials used, and the overall look that those materials (and any additions) provide the sculpture are all protectable elements.

"Once a court has distinguished between unprotected ideas and protected expression in a copyrighted work, it must determine whether the protected elements are substantially similar to

---

[28]*Blehm*, --F.3d---, 2012 WL 6700437, at *4 (citing 17 U.S.C. § 102(b)).

[29]*Id*. at *5 (quotation marks and citation omitted).

[30]*Id*. at *6.

the accused work."[31]  "This is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis."[32]

"To decide whether two works are substantially similar we ask whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."[33]  "The essence of this test is whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."[34]  "The touchstone of the analysis is the overall similarities rather than the minute differences between the two works."[35]

At a superficial level, the Whitaker Sculpture and Stanwood Windmill are similar in that they both consist of two counter-rotating spinners with eight arms ending in wind-catchers.  A closer look at the protectable elements of the two sculptures, however, reveals the vast differences between the works.

The most obvious difference between the Whitaker Sculpture and the Stanwood Windmill is the shape of the arms.  The Whitaker Sculpture's arms are a gentle "C" curve, while the arms of the Stanwood Windmill are a much more dramatic "S" curve.  The different shape of

---

[31]*Id*. at *6.

[32]*Jacobsen*, 287 F.3d at 943 (quotation marks and citation omitted).

[33]*Id*. (quotation marks and citation omitted).

[34]*Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1288 (quotation marks and citation omitted).

[35]*Id*. (quotation marks and citation omitted).

the arms, especially when the two-spinners are mounted as designed, create a vastly different appearance.

Further, the arms are made of different materials. The Whitaker Sculpture's arms are stainless steel. The Stanwood Windmill's arms are made of copper, as is the entire product except for the brass hub. The different materials used in the Whitaker Sculpture create a very different look than that of the Stanwood Windmill. The use of both stainless steel and copper creates a more weathered look, especially when combined with the patina, discussed below.

Another key difference between the two works is the wind-catchers. The wind-catchers on the Whitaker Sculpture are made of copper and are obviously hand-made. Additionally, the wind-catchers on the Whitaker Sculpture have a somewhat deep, cup shape. Finally, like all the copper elements of the Whitaker Sculpture, the wind-catchers have a patina of turquoise verdigris applied to them.

The Stanwood Windmill's wind-catchers are also made of copper, but the similarities end there. The wind-catchers are obviously shaped like leaves, complete with stems and veins. In contrast to the Whitaker Sculpture's hand-pounded wind-catchers, the Stanwood Windmill's wind-catchers are more shallow and are clearly machine-pressed. Finally, the Stanwood wind-catchers do not have the same coloration as the Whitaker Sculpture, as no patina has been applied.

Finally, all of the copper elements of the Whitaker Sculpture have a patina of turquoise verdigris applied to them, including the wind-catchers and part of the shaft. The Stanwood Windmill contains no such patina. The patina creates a distinct weathered look that the

Stanwood Windmill does not share.  Because of this, the overall look of each work is vastly different.

For all of these reasons, no reasonable juror could find that the Stanwood Windmill is substantially similar to the Whitaker Sculpture.  Therefore, summary judgment in favor of Defendants is appropriate.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 48) is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiffs, and close this case forthwith.

DATED   January 17, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge